UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER,<br><br>      Plaintiff,<br><br>v.<br><br>RELFI, INC., aka GEMINI BUSINESS FUNDING, A Florida Liability Company, and JACQUELINE J. ACEVEDO<br><br>      Defendants. | §<br>§<br>§<br>§  EP-25-cv-00218-LS<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all text messages and phone calls, in this case in El Paso County, Texas.

2. Defendant RELFI, INC. aka GEMINI BUSINESS FUNDING ("Gemini") is a corporation organized and existing under the laws of Florida and can be served via its registered agent Jasastsa Business Services LLC, 22095 US Hwy 19N, Clearwater, Florida 33765.

3. Defendant JACQUELINE J. ACEVEDO ("Acevedo") is a natural person and officer of Defendant Gemini and can be served at 2228 Stacy Court, Dunedin, Florida 34698.

**JURISDICTION AND VENUE**

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5.      This Court has specific personal jurisdiction over Defendants because Defendants intentionally availed itself to the state of Texas by intentionally directing text messages and phone calls into Texas to Plaintiff's 915 area telephone number.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received every single unauthorized call or text from Defendants is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS)" or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

20.     Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

21. Plaintiff ever asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

22. Plaintiff's telephone number 4604 is a residential number and is registered to a cellular telephone service.

23. Plaintiff's telephone number 4604 is not used for commercial purposes.

24. Plaintiff uses telephone number 4604 for personal purposes.

25. Defendant Gemini is a company that offers business funding loans and services.

26. Plaintiff did not have a prior existing business relationship and did not give Defendants written consent to receive text messages or phone calls.

27. Plaintiff received at least twenty-eight (28) text messages and ten (10) phone calls to his personal phone number 4604 from Defendant Gemini soliciting their goods and services since April 1, 2025.

28. On April 4, 2025, Plaintiff received an email from Defendant Gemini from email address khaines@geminibusinessfunding.com, which confirmed Defendant Gemini's identity.

29. On April 26, 2025, Plaintiff sent Gemini an email alerting Gemini to the unwanted phone calls and asking Gemini to put Plaintiff on their internal do not call list. Plaintiff has read receipt on his email. The email was read three times.

30. On May 23, 2025, Plaintiff sent Gemini another email alerting Gemini to the continued phone calls. Gemini read the email 40 times.

31. On or about late May Plaintiff received a phone call from an attorney representing Gemini. The phone calls continued despite the discussion with the attorney.

32. Table A displays the text messages and phone calls made to Plaintiff by Defendant Gemini:

TABLE A

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 04/01/2025 | 8:00 AM | 813-537-3669 | Text from Kyle |
| 2. | 04/01/2025 | 9:03 AM | 813-537-3669 | Missed Call |
| 3. | 04/01/2025 | 9:04 AM | 813-537-3669 | Missed Call |
| 4. | 04/01/2025 | 9:44 AM | 813-537-3669 | Text from Kyle |
| 5. | 04/01/2025 | 10:08 AM | 813-537-3669 | Missed Call |
| 6. | 04/01/2025 | 12:30 PM | 813-537-3669 | Disconnected Call |
| 7. | 04/01/2025 | 12:32 PM | 813-537-3669 | Text from Kyle |
| 8. | 04/04/2025 | 3:08 PM | 813-537-3669 | Missed Call |
| 9. | 04/04/2025 | 3:10 PM | 813-416-3989 | Text from Kyle |
| 10. | 04/10/2025 | 3:10 PM | 813-416-3989 | Text from Kyle |
| 11. | 04/05/2025 | 11:12 AM | 813-416-3989 | Text from Kyle |
| 12. | 04/07/2025 | 10:57 AM | 813-537-3669 | Missed Call |
| 13. | 04/14/2025 | 12:40 PM | 813-537-3669 | Missed Call |
| 14. | 04/15/2025 | 11:58 AM | 813-537-3669 | Missed Call |
| 15. | 04/18/2025 | 3:12 PM | 813-537-3669 | Declined Call |
| 16. | 04/22/2025 | 9:38 AM | 813-537-3669 | Missed Call |
| 17. | 04/26/2025 | 11:57 AM | 813-537-3669 | Text from Kyle |
| 18. | 05/02/2025 | 7:19 AM | 929-286-5795 | Text from Igor |
| 19. | 05/05/2025 | 10:06 AM | 929-286-5795 | Text from Igor |
| 20. | 05/06/2025 | 10:11 AM | 929-286-5795 | Text from Igor |
| 21. | 05/09/2025 | 12:14 PM | 929-286-5795 | Text from Igor |

| 22. | 05/12/2025 | 9:45 AM  | 929-286-5795 | Text from Igor |
| --- | ---------- | -------- | ------------ | -------------- |
| 23. | 05/13/2025 | 10:37 AM | 929-286-5795 | Text from Igor |
| 24. | 05/15/2025 | 8:21 AM  | 929-286-5795 | Text from Igor |
| 25. | 05/19/2025 | 11:37 AM | 929-286-5795 | Text from Igor |
| 26. | 05/20/2025 | 9:17 AM  | 929-286-5795 | Text from Igor |
| 27. | 05/22/2025 | 10:22 AM | 929-286-5795 | Text from Igor |
| 28. | 05/27/2025 | 7:45 AM  | 929-286-5795 | Text from Igor |
| 29. | 05/28/2025 | 7:43 AM  | 929-286-5795 | Text from Igor |
| 30. | 05/29/2025 | 11:30 AM | 929-286-5795 | Text from Igor |
| 31. | 05/30/2025 | 1:13 PM  | 929-286-5795 | Text from Igor |
| 32. | 06/02/2025 | 9:33 AM  | 929-286-5795 | Text from Igor |
| 33. | 06/03/2025 | 12:12 PM | 929-286-5795 | Text from Igor |
| 34. | 06/04/2025 | 9:14 AM  | 929-286-5795 | Text from Igor |
| 35. | 06/10/2025 | 10:09 AM | 929-286-5795 | Text from Igor |
| 36. | 06/11/2025 | 9:06 AM  | 929-286-5795 | Text from Igor |
| 37. | 06/12/2025 | 9:55 AM  | 929-286-5795 | Text from Igor |
| 38. | 06/16/2025 | 8:33 AM  | 929-286-5795 | Text from Igor |

33.     Defendants placed multiple unauthorized text messages and phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

34.     The text messages Plaintiff received from Defendant Gemini were placed while knowingly ignoring the national do-not-call registry. The text messages and phone calls were placed without training their agents/employees on the use of an internal do-not-call policy.

35. On April 20, 2025, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not find any registration for any of the Defendants.

36. Defendants placed the unauthorized texts or calls knowingly and willfully.

37. Each of the text messages alleged herein was made without a valid Texas telephone solicitation registration.

38. No emergency necessitated any of the alleged texts and calls.

39. Plaintiff has limited data storage capacity on his cellular telephone. Incoming automated telemarketing text messages and phone calls consumed part of this capacity.

### DEFENDANT ACEVEDO IS PERSONALLY LIABLE

40. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

41. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F.

Supp. 2d 892 (W.D. Tex. 2001)

42. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendants Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

43. The Same Court held that corporate officers were also personally liable for DTPA violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

44. At all times material to the Complaint Defendant Acevedo has formulated, directed, controlled, and had the authority to control, and participated in the acts and practices set forth in this Complaint.

45. Acevedo either directly ordered her agents to ignore the National Do-Not-Call Registry, or indirectly by refusing to purchase the National Do-Not-Call Registry and instructing her

agents on how to use the National DNC Registry.

46. Acevedo approved of the phone calls scripts and directed the phone calls be sent to consumers on the National Do Not Call list.

47. Acevedo refused to take steps to hone do-not-call requests and willfully allowed her agents and employees to continue to make phone calls to Plaintiff with full knowledge of Plaintiff's desire to not receive phone calls from Gemini.

48. Acevedo is not an innocent bystander, but the mastermind that schemed, planned, directed, initiated, and controlled fraudulent behavior.

## TEXAS BUSINESS AND COMMERCE CODE 302.101

49. Defendants initiated the text messages and phone calls alleged herein and is a "seller" under the Texas Business and Commerce Code ("TBCC") because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

50. "' Telephone solicitation' means a *telephone call* a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. Com. Code § 302.002.

51. Telephone call is defined as "a call or other transmission made to or received at a telephone number, including a call or other transmission, including a transmission or a text or graphic message or of an image, to a mobile telephone number." Tex. Bus. Com. Code § 304.002(C).

52. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

53. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

54. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the

10

seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the calls Plaintiff received by hiring telemarketers to make those calls.")

55. The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code §§ 302.302(a), 302.302(d).

56. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

57. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE PHONE CALLS

58. Defendants' text messages and phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

59. Defendants' text messages and phone calls harmed Plaintiff by trespassing upon and

interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

60. Defendants' text messages and phone calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

61. Plaintiff has been harmed, injured, and damaged by the automated text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone leading to higher electric bills.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

62. The texts and calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 18 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### COUNT ONE:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**
**(Against All Defendants)**

63. Plaintiff realleges and incorporates the preceding paragraphs 1-62 as if fully set forth herein.

64. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

65. Defendants and/or their agents, called Plaintiff's private residential telephone which was

successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the alleged texts, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

66.     Plaintiffs was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendants' texts described above, in the amount of $500 per call.

67.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

68.     Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:
### (Violations of Texas Business and Commerce Code 302.101) Failure to obtain a Telephone Solicitation Registration Certificate (Against All Defendants)

69.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-64.

70.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non- registered solicitation texts to Plaintiff's cellular telephone number without his prior express written consent.

71.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302(a).

72.     Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants

jointly and severally as follows:

    A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

    B.    A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

    C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

    D.    An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants for twenty-eight (28) texts and ten (10) calls;

    E.    An award of $5,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 302.101 for ten (10) calls;

    F.    An award to Mr. Callier of damages, as allowed by law under the TCPA;

    G.    An award to Mr. Callier of interest, and costs, as allowed by law and equity;

    H.    Such further relief as the Court deems necessary, just, and proper;

June 17, 2025,                                               Respectfully submitted,

                                                                       /s/ Brandon Callier

                                                                       Brandon Callier
                                                                       1490A George Dieter Drive
                                                                       #174
                                                                       El Paso, TX 79936
                                                                       915-383-4604
                                                                       Callier74@gmail.com